UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THE MINKIN FAMILY TRUST I,
U.S. TRUST COMPANY OF DELAWARE,

    Plaintiffs,

v.                                                                                  Case No. 06-11970

PHILIP S. MINKIN DECLARATION                         HONORABLE AVERN COHN
OF TRUST and PLANTE MORAN TRUST,

    Defendants.
_____/

**MEMORANDUM AND ORDER
DENYING DEFENDANT'S MOTION TO DISMISS OR FOR SUMMARY JUDGMENT
AND
GRANTING PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

I.  Introduction

This is a contract case involving trust obligations. Plaintiffs, the Minkin Family Trust I (Minkin Family Trust) and U.S. Trust Company of Delaware (U.S. Trust), as Trustee of the Minkin Family Trust, are suing defendants Philip S. Minkin Declaration of Trust (Minkin DOT) and Plante Moran Trust, seeking (1) a declaratory judgment that (a) there is a valid written agreement between the parties in which the Minkin DOT was to sell certain assets to the Family Trust and (b) defendants have breached the agreement. Plaintiffs' also claim (2) breach of contract and (3) specific performance.

Before the Court is defendants' motion to dismiss, or in the alternative, for summary judgment and plaintiffs' cross motion for summary judgment. For the reasons that follow, plaintiffs' motion will be granted and defendants' motion will be denied.

II.  Background

The material facts as gleaned from the record follow.[1]

Philip S. Minkin (Minkin) was the trustee of the Minkin DOT dated September 30, 1996.  Minkin also established the Minkin Family Trust, dated September 9, 2005.  U.S. Trust is the Trustee of the Minkin Family Trust.  The named co-trustees of the Minkin Family Trust, Richard Minkin and Jerold Minkin, apparently Minkin's sons, resigned as trustees on April 18, 2006 and April 6, 2006.

On September 9, 2005, Minkin, as Trustee of the Minkin DOT, entered into an Installment Sale Agreement (Sale Agreement) wherein the Minkin DOT, through Minkin, agreed to sell certain Class B shares in Minkin Holding, LLC, an Oklahoma limited liability company, to U.S. Trust.  As will be explained, the purchase price was contingent and variable; however, the parties agreed that the fair market value of the Class B shares was $5,000,000.00.

As to financing the sale, U.S. Trust, as buyer, was not required to pay any money down; rather the purchase price was to be paid in installments by the execution of a "Self-Cancelling Installment Note" (Note) at the time of closing.  The Note called for installment payments over the course of nine years, ending September 9, 2014.  The purchase price was variable, "depending on how long the Seller [Minkin] lives."

Minkin died unexpectedly on September 16, 2005, seven days after signing the Sale Agreement.

---

[1]The Court requested that the record be supplemented with copies of the Minkin DOT, the Minkin Family Trust, and any information as to the capital structure of Minkin Holding Company, LLC.  The parties supplemented the record per the Court's request.

U.S. Trust signed the Note on September 30, 2005, two weeks after Minkin died. The current successor trustee of the Minkin DOT is Edna Minkin.

On April 22, 2006, Edna Minkin filed a Petition for Limited Probate Court Supervision of Irrevocable Trust for Purposes of Appointment of Special Fiduciary in Oakland County Probate Court, seeking the appointment of an "independent trustee to act as Special Fiduciary with respect to all matters relating to enforcement of the [Sale Agreement], until a determination is made as to whether the [Sale Agreement] is enforceable or the matter is settled." The petition also stated that Edna Minkin believed the Minkin Family Trust was going to file suit against the Minkin DOT to enforce the Sale Agreement.

On April 25, 2006, the Oakland County Probate Court entered an Order Appointing Special Fiduciary, appointing Plante Moran Trust as Special Fiduciary of the Minkin DOT.

On April 27, 2006, plaintiffs filed this action.

### III. Legal Standards

#### A.

Fed. R. Civ. P. 12(b)(6) provides for a motion to dismiss for failure to state a claim upon which relief can be granted. When analyzing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must take a plaintiff's well-pleaded allegations as true. Mire v. DeKalb County, 433 U.S. 25, 27 n.1 (1977). "[W]hen an allegation in capable of more than one inference, it must be construed in the plaintiff's favor." Sinai v. Lawson & Sessions Co., 948 F.2d 1037, 1039-40 (6th Cir. 1991). "A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that

could be proved consistent with the allegations." Hechuan v. King & Spaulding, 467 U.S. 69, 73 (1984). "The complaint should not be dismissed unless it appears without doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." Computer Leasco v. Volvo White Truck Corp., 820 F. Supp. 326, 332 (E.D. Mich. 1992) (citing Conley v. Gibson, 335 U.S. 41, 45-46 (1957)).

B.

Summary judgment will be granted when the moving party demonstrates that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The nonmoving party may not rest upon his pleadings; rather, the nonmoving party's response "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). Showing that there is some metaphysical doubt as to the material facts is not enough; "the mere existence of a scintilla of evidence" in support of the nonmoving party is not sufficient to show a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Rather, the nonmoving party must present "significant probative evidence" in support of its opposition to the motion for summary judgment in order to defeat the motion. See Moore v. Philip Morris Co., 8 F.3d 335, 340 (6th Cir. 1993); see also Anderson, 477 U.S. at 249-50. Additionally, and significantly, "affidavits containing mere conclusions have no probative value" in summary judgment proceedings. Bsharah v. Eltra Corp., 394 F.2d 502, 503 (6th Cir.

1968).

The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law." In re Dollar Corp., 25 F.3d 1320, 1323 (6th Cir. 1994) (quoting Anderson, 477 U.S. at 251-52). The Court "must view the evidence in the light most favorable to the non-moving party." Employers Ins. of Wausau v. Petroleum Specialties, Inc., 69 F.3d 98, 101 (6th Cir. 1995). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. See Anderson, 477 U.S. at 255. Only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law may summary judgment be granted. Thompson v. Ashe, 250 F.3d 399, 405 (6th Cir. 2001).

### IV.  Analysis

#### A.

Defendants argue that the sale of the Class B shares cannot go forward because the Sale Agreement fails for frustration or purpose and/or impracticability as a result of Minkin's death prior to the commencement of the Note. Defendants say that because Minkin had to be living at the time the Note commenced and because he was not, the Sale Agreement never became operative. As such, defendants are under no obligation to consummate the sale.

Plaintiffs argue that Minkin's death does not void the Sale Agreement. Although the Sale Agreement and Note limits the obligation of U.S. Trust as a buyer to pay for the Class B shares upon Minkin's death, it does not cancel the agreement. Minkin signed the Sale Agreement, which incorporates the Note, prior to his death. There was no

frustration of purpose as evidenced by the Sale Agreement and Note containing language regarding the event of Minkin's death.

B.

Both parties believe that they are entitled to summary judgment and cite to the Sale Agreement and the Note to support their positions.  Resolution of this dispute centers on relevant provisions in the Sale Agreement and the Note.

The Sale Agreement provides in part:

ARTICLE I<br>PURCHASE AND SALE

...
B. **Promissory Note: Contingent Purchase Price**.   The purchase price for the Assignee Interest [the Class B shares] will be payable on an installment basis and will be evidenced by a promissory note (the "Note") from Purchaser, representing the total amount payable hereunder or such other percentage as agreed between them. ... The parties intend that this be a contingent payment sale.  The purchase price is variable, and will be between zero ($0) and the amount finally determined by the Appraiser, plus interest.  **The maximum amount Seller will receive will be determined by the Appraiser chosen above and will take into consideration the premium that a Seller would require to compensate the Seller for the risk PHILIP S. MINKIN dies during the term of the Note.  A condition precedent to the payment due hereunder is that PHILIP S. MINKIN be alive on the scheduled payment date.  Consequently, if PHILIP S. MINKIN dies before the scheduled payment date, the obligation to make such payment does not come into existence.**  The Note may be prepaid at any time, without penalty.

(Emphasis added).

...
D. Security.  The Note shall be secured by the Assignee Interest [the Class B shares] purchased and by all other Assignee Interest owned by Purchaser, in accordance with the terms ... **The Note will be non recourse, however, Purchaser shall be personally liable for any unpaid interest which accrues even if PHILIP S. MINKIN dies during the term**.

(Emphasis added).

ARTICLE II<br>CLOSING

A.    <u>Closing</u>.  The closing ("Closing") of the purchase and sale of the [Class B shares] will occur as soon after the Appraiser completes his valuation fo the shares of the Company.  At the Closing, Purchaser will deliver its Note for the full amount due from the Purchaser hereunder.  Seller will deliver an Assignment Separate from Certificate with respect to the Assignees Interest. ..

...

C.    <u>Effective Date</u>.  **The effective date of the purchase and sale contemplated hereunder, and the date of the Note, shall be September 9, 2005, at 10:00 a.m**.

The Note contains the following relevant provisions:

1.1.    Contingent Payments.  This Note evidenced the obligation of Purchaser under an Installment Sale Agreement executed by Purchaser and Seller dated September 9, 2005, providing for the purchase of $5,000,000.00 worth of [Class B shares].  Seller and Purchaser intend that this be a contingent payment sale.  The purchase price is variable, and will be somewhere between zero ($0) and _____, depending upon how long Seller lives.  The maximum amount Seller will receive will be determined by an Appraiser chosen in the manner described in the [Sale Agreement].  A condition precedent to each contingent payment is that Seller be alive on the scheduled potential payment date.  **Consequently, if Seller dies before the scheduled potential payment date, the obligation to make such payment does not come into existence**.

1.2.    <u>Intention of the Parties</u>.  **It is the intention of the parties that the Purchaser's obligation to make payment to Seller is contingent.  If Seller dies during the term of this Note, Purchaser's obligations to make payment on principal will not come into existence even if no principal payment is made**.

(Emphasis added).

Defendants argue that Minkin must have been alive for at least a second after the Note "commenced," and because he was not alive, the Note never "commenced" and is therefore not operative.  Defendants frame the issue as one of frustration of purpose.  That is, defendants say that the purpose of the Sale Agreement and Note was frustrated because Minkin died before the Note "commenced," with "commencement"

being a condition precedent to its obligations under the Sale Agreement.

The Court is not persuaded by defendants' argument.  "When the terms of a contract are unambiguous, their construction is for this Court to determine as a matter of law."  Hubbell, Roth & Clark, Inc v. Jay Dee Contractors, Inc., 249 Mich. App 288, 291 (2001).

Here, the terms of the Sale Agreement and the Note are clear.  First, neither the Sale Agreement or the Note make mention anything about the Note "commencing."  To the extent that Minkin had to be alive at the time the Note "commenced," the effective date of the Sale Agreement and the Note is September 9, 2006.  Minkin was alive on that date.  Moreover, the death of Minkin was foreseeable and specifically factored into the terms of the Sale Agreement.  U.S. Trust's obligation, as Trustee of the Minkin Family Trust, to pay for the Class B shares, was expressly contingent upon Minkin being alive at the time payments became due over the nine year period of the Note.  That is not to say, as defendants suggest, that the Sale Agreement is void or that the Minkin DOT, as seller, has no obligation to sell the shares.  The sale obligation was not contingent, only the payment obligation was contingent.  Section 1.2 of the Note and paragraphs B. and D. of the Sale Agreement are clear and unambiguous.  Defendants have an obligation to go forward under the Sale Agreement.  Minkin's death has no effect on their obligation, it merely affects U.S. Trust's payment obligation.  The Sales Agreement is not void or frustrated of purpose.

V.  Conclusion

For the reasons stated above, plaintiffs' cross-motion for summary judgment is GRANTED.  Defendants' motion to dismiss or for summary judgment is DENIED.

An appropriate judgment shall be entered.

SO ORDERED.

       s/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE

Dated:  December 8, 2006

I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, December 8, 2006, by electronic and/or ordinary mail.

       s/Julie Owens
Case Manager, (313) 234-5160